WO	IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THOMAS RUPPERT,                )
                               )
                    Plaintiff, )
                               )
     vs.                       )
                               )
ATLAS AIR, INC. LONG TERM      )
DISABILITY PLAN; HARTFORD LIFE )
AND ACCIDENT INSURANCE CO.,    )
                               )   No. 3:19-cv-0152-HRH
                   Defendants. )
_____)

O R D E R

This is an ERISA action, in which plaintiff Thomas Ruppert seeks judicial review of an adverse decision by defendant Hartford Life and Accident Insurance Co. Plaintiff has timely filed his opening brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 15.

[2]Docket No. 19.

Facts

Plaintiff was employed by Atlas Air Inc. as a pilot from 1999 to 2018.[3] Atlas Air is the sponsor and plan administrator of the Atlas Long Term Disability Plan, which provides Long Term Disability (LTD) benefits to its pilots and air crew pursuant to a group policy of insurance issued by defendant. Defendant is the claims administrator of the Plan.

Defendant determined that plaintiff became disabled on June 1, 2018,[4] and on September 21, 2018, plaintiff's claim for LTD benefits was approved.[5] Plaintiff was advised that his LTD benefits were "intended to supplement income you may receive as a result of your disability or retirement" and that "any other income benefits you receive may reduce your LTD benefits."[6] Plaintiff was further advised that "[o]ther income can include, but is not limited to, any Social Security benefits you or your family receives[.]"[7] Plaintiff was also advised that defendant's "records indicate you may qualify for Social Security Disability (SSD) benefits. Your LTD policy requires you to apply for SSD benefits. . . ."[8]

---

[3]Admin. Rec. at 19, Exhibit A, Docket No. 13.

[4]Admin. Rec. at 67, Exhibit A, Docket No. 13. Plaintiff was disabled due to seborrheic keratosis, which caused serious vision problems. Admin. Rec. at 19, Exhibit A, Docket No. 13.

[5]Admin. Rec. at 67, Exhibit A, Docket No. 13.

[6]Id.

[7]Id.

[8]Admin. Rec. at 69, Exhibit A, Docket No. 13.

-2-

On September 25, 2018, plaintiff was advised that he was entitled to Social Security Retirement benefits of $2,461 per month, beginning in July 2018.[9] Plaintiff provided this information to defendant in October 2018.[10]

On November 6, 2018, defendant informed plaintiff that his Social Security Retirement benefits were "Other Income Benefits" under the Plan and thus his monthly LTD benefits of $10,000 would be reduced by $2,461.50, beginning on July 1, 2018.[11]

Plaintiff appealed this decision, arguing that Social Security Retirement benefits were not "Other Income Benefits" under the Plan.[12] On April 29, 2019, defendant denied plaintiff's appeal, having "determined the offset for Social Security Retirement (SSR) benefits is appropriate under the terms of the" Plan.[13]

On May 28, 2019, plaintiff commenced this action, in which he seeks review of defendant's final determination.

## Standard of Review

"District courts review a decision to deny or terminate benefits under an ERISA plan 'under a de novo standard unless the benefit plan gives the administrator or fiduciary

---

[9] Admin. Rec. at 3, Exhibit A, Docket No. 13.

[10] Id.

[11] Admin. Rec. at 73, Exhibit A, Docket No. 13.

[12] Admin. Rec. at 92, Exhibit A, Docket No. 13.

[13] Id.

discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 981 (9th Cir. 2005) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Here, the Plan gave defendant the "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."[14] Thus, the court reviews defendant's determination that an offset for Social Security Retirement benefits was appropriate under the Plan for an abuse of discretion.

Plaintiff's contention that the court should review defendant's determination under the de novo standard is simply wrong. In the Ninth Circuit, "'[w]here an ERISA Plan grants discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a plan administrator's interpretation of a plan is reviewed for abuse of discretion.'" O'Rourke v. N. Calif. Electrical Workers Pension Plan, 934 F.3d 993, 998 (9th Cir. 2019) (quoting Lehman v. Nelson, 862 F.3d 1203, 1216 (9th Cir. 2017)).

"Under" the abuse of discretion "standard, [defendant's] interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is 'not grounded on any reasonable basis.'" Tapley v. Locals 302 and 612 of Int'l Union of Operating Engineers-Employers Const. Industry Retirement Plan, 728 F.3d 1134, 1139 (9th Cir. 2013) (quoting Oster v. Barco of Cal. Emps.' Ret. Plan, 869 F.2d 1215, 1218 (9th Cir. 1988)). "The analysis is not based on 'whose interpretation of the plan documents is most

---

[14]The Plan at 52, Exhibit B, Docket No. 13-4.

persuasive, but whether the [administrator's] interpretation is unreasonable.'" Moyle v. Liberty Mut. Retirement Ben. Plan, 823 F.3d 948, 958 (9th Cir. 2016) (quoting Canseco v. Constr. Laborers Pension Tr., 93 F.3d 600, 606 (9th Cir. 1996)). "When reviewing interpretive challenges for abuse of discretion, the [c]ourt closely reads contested terms and 'appl[ies] contract principles derived from state law [,] . . . guided by the policies expressed in ERISA and other federal labor laws.'" Tapley, 723 F.3d at 1139 (quoting Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985 (9th Cir. 1997)). Defendant will have abused its discretion if it "construe[d] provisions of [the P]lan in a way that clearly conflicts with the plain language of the Plan, render[ed] nugatory other provisions of the Plan, or lack[ed] any rational nexus to the primary purpose" of the Plan[.]" Id. (internal citations omitted).

"The manner in which a reviewing court applies the abuse of discretion standard . . . depends on whether the administrator has a conflicting interest." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009). "In the absence of a conflict, judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard." Id. But, if the plan administrator is operating under a conflict of interest, the court "must take into account the administrator's conflict of interest as a factor in the analysis." Id. at 630. Here, defendant's "dual role as plan administrator, authorized to determine the amount of benefits owed, and insurer, responsible for paying

such benefits, creates a structural conflict of interest." Stephan v. Unum Life Ins. Co. of America, 697 F.3d 917, 929 (9th Cir. 2012).

"The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968 (9th Cir. 2006). But, the court may view a conflicted administrator's decision with a great deal of skepticism if, for example, there is evidence that

> the administrator provide[d] inconsistent reasons for denial, fail[ed] adequately to investigate a claim or ask[ed] the plaintiff for necessary evidence, fail[ed] to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

Id. at 968–69 (internal citations omitted).

Defendant argues that the court should view its decision with a low level of skepticism and offers evidence in the form of a declaration from its Director of Group Insurance Claims, Adam Garcia, in support. Garcia avers that defendant "maintains a separate appeals unit for the consideration of claims that have been denied by the claims department on its initial review" and that "the individual responsible for the appeal reviews the claim, and all evidence, without affording deference to the initial adverse benefit determination."[15] Garcia

---

[15]Declaration of Adam Garcia [etc.] at 2, ¶¶ 3, 5, Docket No. 20.

further avers that defendant "does not provide Ability Analysts, or Appeals Specialists with incentives, remuneration, bonuses, awards, achievements, or other recognition based in whole or in part upon the denial or termination of claims"[16] and that defendant's "claims decision-makers are paid fixed salaries and performance bonuses that are wholly unrelated to the number of claims paid or claims denied."[17] Garcia further avers that defendant's "Ability Analysts and Appeals Specialists are evaluated on the quality and accuracy of their claims decisions in accordance with the applicable plan/policy documents. Hartford does not discourage its claim decision-makers from paying claims that are entitled to payment pursuant to the applicable plan provisions."[18] Finally, Garcia avers that defendant's "claims department[] and appeals unit are completely separate business units from the financial and underwriting departments."[19] Defendant argues that Garcia's averments are evidence that it has taken steps to ensure that its structural conflict does not affect its claims decisions and thus the court should afford the conflict of interest little, if any, weight.

Plaintiff however argues that Garcia's declaration is irrelevant because the de novo standard of review applies here, but as explained above, the abuse of discretion standard applies here. To the extent that Garcia's declaration is relevant, plaintiff argues that other

---

[16] Id. at 3, ¶ 11.

[17] Id.

[18] Id. at 4, ¶ 12.

[19] Id. at 4, ¶ 13.

courts have rejected defendant's assertion of unbiased claims handling. But the cases to which plaintiff cites do not support his argument. In Kouns v. Hartford Life and Accident Insurance Co., 780 F. Supp. 2d 578, 585 (N.D. Ohio 2011), there was "no evidence . . . showing that the [structural] conflict affected Hartford's decision" but because "the effects of such a conflict are exceedingly difficult—if not impossible—to prove," the court "weigh[ed] this conflict as a factor against Hartford. . . ." Moreover, the court found Hartford had abused its discretion in terminating Kouns' LTD benefits, not because of any interpretation of plan language, but rather because of Hartford's treatment of evidence in the record such as a medical opinion, an employability analysis, and the fact that the Social Security Administration had found Kouns disabled. Id. at 585-90. In Gaeth v. Hartford Life Insurance Company, 538 F.3d 524, 527 (6th Cir. 2008), the other case cited by plaintiff, the court did not even discuss a conflict of interest and the issue before the court of appeals was whether the district court's award of attorney fees to Gaeth was proper "even though it did not find that Gaeth [was] still entitled to disability benefits under the plan."

     Here, the evidence before the court shows that defendant has taken steps to prevent its structural conflict of interest from affecting its benefits decisions and there is no evidence that defendant has repeatedly denied benefits by interpreting plan terms incorrectly or otherwise engaged in self-dealing. Thus, the court will view defendant's final determination that the Social Security Retirement benefits offset was proper with a low level of skepticism.

Discussion

The Plan provides that monthly LTD Benefits are calculated as follows:

1) multiply Your Monthly Income Loss by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.[20]

The Plan defines "Other Income Benefits" as follows:

Other Income Benefits means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits for which You or Your family are eligible or that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:

1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law, or substitutes or exchanges for such benefits;
2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
3) plan or arrangement of coverage, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union, or other organization;
4) mandatory "no fault" automobile insurance plan;
5) disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;

---

[20]The Plan at 21, Exhibit B, Docket No. 13-4.

      b)     the Railroad Retirement Act;
      c)     the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provisional pension or disability plan; or
      d)     similar plan or act;
    that You, Your Spouse and/or children, are eligible to receive because of Your Disability; or
6)     disability benefit from the Department of Veterans Affairs, or any foreign or domestic governmental agency:
      a)     that begins after You become Disabled; or
      b)     that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

Other Income Benefits also means the amount of any payments that are made to You or Your family, or to a third party on Your behalf, pursuant to any:

1)     disability benefit under Your Employer's Retirement Plan;
2)     temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
3)     portion of a judgement or settlement of a claim or lawsuit that represents or compensates for Your loss of earnings, less Our pro rata share of any associated reasonable attorneys' fees and court costs;
4)     retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
      a)     You were receiving it prior to becoming Disabled; or
      b)     You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement;

>                        (Other Income Benefits will not include the portion, if any, of any such retirement benefit that was funded by Your after-tax contributions.); or
>            5)     retirement benefits under:
>                   a)     the United States Social Security Act or alternative plan offered by a state or municipal government;
>                   b)     the Railroad Retirement Act;
>                   c)     the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
>                   d)     similar plan or act;
>                   that You, Your Spouse and/or children receive because of Your retirement, unless you were receiving them prior to becoming Disabled.[21]

The court "begin[s] its inquiry with the plain language of the Plan, interpreting it 'in an ordinary and popular sense as would a person of average intelligence and experience.'" Tapley, 728 F.3d at 1140 (quoting Gilliam v. Nev. Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007)). Plaintiff argues that it would not be clear to a person of average intelligence and experience reading the definition of "Other Income Benefits" that LTD benefits could be reduced by the receipt of Social Security Retirement benefits, even though such benefits are listed in subpart 5a of the second paragraph of the definition.

First, plaintiff contends that the inclusion of Social Security Retirement benefits as "Other Income Benefits" is inconsistent with the first provision in the definition. That definition begins: "Other Income Benefits means the amount of any benefit for loss of

---

[21]The Plan at 31-32, Exhibit B, Docket No. 13-4.

income, provided to You or Your family, <u>as a result of the period of Disability for which You are claiming benefits under The Policy</u>."[22] Because Social Security Retirement benefits are not benefits one receives as a result of a disability, plaintiff argues that a person of average intelligence and experience would not understand such benefits to be included in the "Other Income Benefits" definition.

Plaintiff however is ignoring the fact that the "Other Income Benefits" definition includes two paragraphs, each of which are followed by numbered subparts. The first paragraph lists six types of "Other Income Benefits" that a beneficiary might receive because of his disability. The second paragraph lists five types of income that are "also" included in the definition of "Other Income Benefits." By using the term "also" in the second paragraph, the Plan plainly indicates that what follows is different from and in addition to what is set out in the first paragraph. Thus, including Social Security Retirement benefits as "Other Income Benefits" in the second paragraph is not inconsistent with the definition of "Other Income Benefits" in the first paragraph, as plaintiff argues.

Plaintiff next argues that a person of average intelligence and experience would be misled or confused by the placement of the parenthesized statement just before subpart 5a:

> (Other Income Benefits will not include the portion, if any, of any such retirement benefit that was funded by Your after-tax contributions.); or
>     5)    retirement benefits under:

---

[22]<u>Id.</u> at 31 (emphasis added).

>           a)      the United States Social Security Act or alternative plan offered by a state or municipal government[.[23]]

Plaintiff argues that a person of average intelligence and experience reading this portion of the definition would be lead to believe that "Other Income Benefits" do not include Social Security Retirement benefits. Plaintiff argues that the parenthesized statement appears to be an introductory paragraph for a list of benefits that are <u>not</u> "Other Income Benefits." Plaintiff argues that at the very least, the "Other Income Benefits" definition violates 29 C.F.R. § 2520.102–2(b), which provides in relevant part that "[a]ny description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." As the Ninth Circuit has explained, "'the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence.'" <u>Simkins v. NevadaCare, Inc.</u>, 229 F.3d 729, 736 (9th Cir. 2000) (quoting <u>Kunin v. Benefit Trust Life Ins. Co.</u>, 910 F.2d 534, 540 (9th Cir. 1990)). This is in keeping with ERISA itself which provides that a summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

---

[23]<u>Id.</u> at 32.

Plaintiff compares this case to Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 383 (9th Cir. 1994), which involved a pre-existing condition exclusion. The court explained that

> [t]he Baker Group Summary Plan Description, which was provided to participants such as Saltarelli, covers 43 pages in single-spaced typescript. The preamble states that "[t]he Plan is subject to all terms, provisions and conditions recited on the following pages."
> Among the Baker Group plan provisions is an exclusion for "pre-existing conditions." However, an insured reading the table of contents of the plan summary would find no heading for this critically important item. The only arguably relevant heading apparent from the table of contents, "Eligibility Rules: Employee Eligibility and Effective Date," contains no reference to it at all. The "Medical Care Benefits" chapter in the body of the document does reveal a subsection entitled "Exclusions and Limitations," but the pre-existing conditions exclusion receives no mention here either.
> Instead, the exclusion can be found only in the midst of the "Definitions" chapter. Even then, it requires a coordinated reading of three separate definitions: those for "Pre–Existing Condition," "Illness," and "Injury."

Id. at 385. In other words, "Baker Group chose to bury one of the plan's most significant provisions amidst definitions, rather than forthrightly stating the pre-existing conditions exclusion in the operative clauses of the plan description." Id. The court thus held that "since Baker Group's attempted exclusion was not clear, plain, and conspicuous enough to negate layman Saltarelli's objectively reasonable expectations of coverage, it was unenforceable. . . ." Id. at 387. Similarly here, plaintiff argues that the court should find that defendant's inclusion of Social Security Retirement benefits as one of the benefits that would

reduce a beneficiary's LTD benefits was not "clear, plain, and conspicuous enough" for a lay person to understand and thus defendant should not be allowed to rely on this provision.

Plaintiff is suggesting that a person of average intelligence and experience would read the following portion of the Plan without regard to the punctuation:

> (Other Income Benefits will not include the portion, if any, of any such retirement benefit that was funded by Your after-tax contributions.); or
>     5)     retirement benefits under:
>         a)     the United States Social Security Act or alternative plan offered by a state or municipal government[.[24]]

In other words, plaintiff argues that a person of average intelligence and experience would not understand the import of the semicolon before the "or."

But, a person of average intelligence and experience would read the entire second paragraph of the "Other Income Benefits" section of the Plan and understand that what is in parentheses is not an introduction to a list of benefits that are not considered "Other Income Benefits," but rather that it goes with subpart 4 and that subpart 5a is part of the list set out in the second paragraph of the "Other Income Benefits" definition. A person of average intelligence and experience would read the Plan language in the same way as defendant did, or at least <u>could</u> read it in the same way, which means that defendant had a reasonable basis for its interpretation of the Plan language.

---

[24]The Plan at 32, Exhibit B, Docket No. 13-4.

Plaintiff's other arguments are unavailing. Plaintiff makes much of the fact that the Plan spells out in some detail how the receipt of Social Security Disability benefits will affect a beneficiary's LTD benefits[25] and seems to be suggesting that because the Plan did not do the same for Social Security Retirement benefits, a beneficiary would not expect his LTD benefits to be reduced by the receipt of Social Security Retirement benefits. But what the Plan says about Social Security Disability benefits has no bearing on this case, which involves an offset for Social Security Retirement benefits. A person of average intelligence and experience would understand that there is a difference between Social Security Disability benefits and Social Security Retirement benefits.

Plaintiff also compares the language in the Plan to that in <u>Fuller v. Liberty Life Assurance of Boston</u>, 302 F. Supp. 2d 525 (W.D.N.C. 2004). There, the plan defined "'Benefits from other income'" as "includ[ing] '[t]he amount of any Disability Benefits, or Retirement Benefits the Participant voluntarily elects to receive as retirement payment under the Employer's Retirement Plan" and "[t]he amount of Disability and/or Retirement Benefits under the United States Social Security Act." <u>Id.</u> at 528-29. Plaintiff argues that this illustrates that it is not difficult to draft a plan that clearly allows for a reduction for Social Security Retirement benefits. But, plaintiff argues that is not what defendant has done here. Plaintiff argues that courts routinely refuse to allow reductions of LTD benefits when such reductions are not clearly delineated in the plan, and plaintiff urges the court here to do

---

[25] <u>Id.</u> at 26-27.

likewise. See Hannington v. Sun Life and Health Ins. Co., 711 F.3d 226, 234 (1st Cir. 2013) (holding that an offset for VA disability benefits was improper because the plan did not expressly include such benefits in its definition of Other Income Benefits and such disability benefits are "dissimilar" to Social Security Disability benefits); Riley v. Sun Life and Health Ins. Co., 657 F.3d 739, 740 (8th Cir. 2011) (same); Lee v. Dayton Power and Light Co., 604 F. Supp. 987, 994 (D. C. Ohio 1985) (holding that offset for Social Security benefits received by spouse or children not appropriate because plan never mentioned such benefits). But in these cases, the offset at issue was not even mentioned in the plan. Here, in contrast, the Plan lists Social Security Retirement benefits as "Other Income Benefits" and does so in a way that a person of average intelligence and experience would understand that the receipt of such benefits would result in a reduction in LTD benefits.

The Plan is neither confusing nor ambiguous. Social Security Retirement benefits are clearly "Other Income Benefits" which will be deducted when calculating the amount of LTD benefits available under the Plan.

## Conclusion

Viewing defendant's final determination with a low level of skepticism, the court concludes that defendant did not abuse its discretion in determining that an offset for Social Security Retirement benefits was appropriate under the Plan.

DATED at Anchorage, Alaska, this 27th day of December, 2019.

/s/ H. Russel Holland  
United States District Judge